IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| ZHAOCHENG ANTHONY TAN, et al., <br><br> Petitioners, <br><br> v. <br><br> DONALD TRUMP, in his official capacity as President of the United States, et al., <br><br> Respondents. | No. 26-1047 |

**RESPONSE TO PETITIONERS' PROCEDURAL MOTION**

Pursuant to Federal Rule of Appellate Procedure 27, the government hereby files this response to petitioners' consolidated procedural motion to clarify the government's position on the requests embedded within that motion.

1. The Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50, div. H, 138 Stat. 955 (2024) (Act), makes it unlawful for third parties to provide certain services to "distribute, maintain, or update" a "foreign adversary controlled application" in the United States. Act § 2(a)(1). The Act defines "foreign adversary controlled

application" to include any application "operated, directly or indirectly," by "ByteDance, Ltd."; "TikTok"; or subsidiaries or successors of those companies. Act § 2(g)(3). An application may be removed from the Act's ambit by execution of a "qualified divestiture" based on certain determinations made by the President. Act § 2(c)(1), (g)(6). Following a series of non-enforcement determinations as TikTok worked to execute a qualified divestiture, the President ultimately approved the sale of TikTok's U.S. operations to a joint venture controlled by a U.S. investor group as a "qualified divestiture" under the Act. *See* Pet. 30.

On March 5, petitioners Zhaocheng Anthony Tan and Garrett Reid filed a petition for review in this Court, in which they invoked the statutory provision that confers jurisdiction in this Court over challenges to actions taken under the Act, *see* Act § 3. Petitioners, who respectively own shares in Alphabet Inc. (the parent company of YouTube) and Meta Platforms, Inc. (the parent company of Instagram), claim that various decisions related to enforcement of the Act against TikTok have affected the price of petitioners' stock because "YouTube and Instagram compete with TikTok for sharing and viewing videos." Pet. 21-24. They primarily ask this Court to declare unlawful the President's approval of the sale and the Attorney General's

previous decisions not to enforce the Act with respect to TikTok pending the negotiation and completion of that sale.

After petitioners filed their petition, this Court entered its standard order directing the filing of initial submissions, which included a deadline of April 20, 2026 (45 days after the filing of the petition), for the parties to file dispositive motions. The government then informed petitioners and the Court that the government intended to file a motion to dismiss the petition for lack of standing by the April 20 deadline.

2. On April 6, 2026, petitioners filed consolidated "procedural motions" requesting a number of different forms of relief from this Court. Petitioners requested leave to amend their petition to add an additional petitioner who is a former employee of TikTok's parent company. *See* Mot. 4-6. Petitioners contend that this additional petitioner has standing both because the "restricted stock units" that he holds in his former employer "are worth far less than they otherwise would be" without the approved sale and because his employment was terminated following the sale. Proposed Amended Pet. 5. Petitioners also requested that the new petitioner be permitted to proceed under a pseudonym. Mot. 6-12. In addition, petitioners' motion asserts an intention to "append evidentiary materials" to their forthcoming briefs, Mot.

12-14, and seeks unspecified "expedited consideration" of the petition, Mot. 14-17. The government now files this response to clarify its positions on each of the requests contained within the motion.

a. The government does not oppose petitioner's request for leave to file an amended petition for review on the condition that the Court reset the dispositive motion deadline. Resetting that deadline is necessary because the government's forthcoming motion to dismiss must take account of the amendments that petitioners have proposed to make to their petition, including the addition of a new petitioner with a distinct theory of standing. Under the government's understanding of the Court's standard practice as reflected in the original order directing initial submissions in this case, resetting that deadline would result in the government's motion to dismiss being due on May 21, 2026 (45 days after the filing of the proposed amended petition).

If the Court grants petitioners leave to file an amended petition, the government takes no position on their request to permit one of the petitioners to proceed pseudonymously.

b. To the extent that petitioners' motion requests that this Court enter an order setting procedures to govern resolution of the petition on the

merits, the government opposes petitioners' request as premature and misguided.

As an initial matter, the government believes that the Court need not resolve any issues regarding consideration of the merits at this juncture. As explained, the government intends to file a motion to dismiss the petition for lack of standing. If the Court were to grant that motion, it would resolve the petition, and there would be no need for the Court to determine the specific procedures or schedule that should apply to any consideration of petitioners' claims on the merits. To the extent that petitioners intend for this Court to nonetheless resolve these procedural questions at the outset (or envision merits or other briefing proceeding before the resolution of the motion to dismiss), such action would risk unnecessarily expending the Court's and the parties' resources. Instead, in the government's view, the Court should defer consideration of any proposal to govern further proceedings until after resolution of the government's forthcoming motion to dismiss.

In any event, although it is unclear exactly how petitioners envision this case unfolding, their filings appear to contemplate the use of unusual procedures that the government does not believe would be necessary or appropriate in this case. Thus, portions of petitioners' filings seem to

suggest that they believe that procedures resembling those employed in district court would be appropriate. *See, e.g.*, Mot. 13-14 (appearing to suggest that petitioners may file a motion for a preliminary injunction or for summary judgment). And their motion also requests that this Court expedite consideration of the case, although without providing any suggested briefing or argument schedule.

This Court, however, routinely considers petitions for review of Executive Branch actions without resorting to district-court procedures; instead, those petitions are generally resolved using the ordinary appellate processes. *Cf.* Fed. R. App. P. 28. If the Court were to deny the government's forthcoming motion to dismiss, the government believes that such ordinary briefing and argument procedures are appropriate. And although it is difficult to take a firm position on petitioners' unelaborated expedition request without a clearer sense of their envisioned schedule, the government does not believe that this case warrants any unusual treatment in this regard. In any event, as explained, considerations of judicial economy and efficiency counsel in favor of resolving the government's forthcoming motion to dismiss before determining an appropriate schedule for any further proceedings.

Petitioners' conduct does not support any request for expedition. Petitioners have sought to amend their petition to add an additional petitioner, recognizing that doing so required resetting the government's deadline for filing a motion to dismiss. As we will explain in our forthcoming motion to dismiss, petitioners, who primarily claim injury in their capacity as stockholders of various companies, face no cognizable injury under Article III, much less the sort of imminent harm that would warrant expedited treatment or extraordinary relief.

Nor does the government acquiesce to petitioners' suggestion that parties should be entitled to attach evidentiary materials to various filings. This is a challenge to a Presidential action that resulted from an inter-agency process and to various actions taken by the Attorney General, and it thus bears no resemblance to the prior *TikTok* case, which involved a challenge to the constitutionality of a statute rather than any Executive Branch action taken under the statute. *See generally TikTok, Inc. v. Garland*, 122 F.4th 930 (D.C. Cir. 2024). In that context, with no district-court record or administrative decision, the parties agreed that it was appropriate to directly submit evidence to this Court. In this case, by contrast, petitioners challenge actions taken by the Attorney General and the President. In such a posture,

judicial review is generally properly confined to "the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). As we have previously noted, there may be disputes about the proper content of this record given the Presidential nature of the action at issue here, but that is not a reason to ignore altogether that this is a review of Executive action.

3. This is an unusual case under an unusual statute, but a few things are clear. First, the government should have an opportunity to file a motion to dismiss on threshold grounds, and the government's deadline should be reset in light of petitioners' effort to amend their petition. Second, the parties are not seeing eye to eye on the procedures for this case; the government contemplates some form of record review, and petitioners have suggested that this case calls for district-court-like procedures such as discovery or motions for summary judgment or preliminary injunctions but also suggested that this case should be resolved using the procedures that were employed in the first *TikTok* case. And third, although petitioners have made a vague request for expedition, they simultaneously agreed that their own actions called for an extension of the government's deadline to file a dispositive motion, and their primary claims of harm come in their capacity

as stockholders rather than as entities whose conduct is regulated in a way that might plausibly give rise to a need for unusually expedited relief. Accordingly, this Court should reset a schedule for the government to file its motion to dismiss and allow for orderly briefing of that motion before proceeding any further.

## CONCLUSION

For the foregoing reasons, the government does not object to petitioners' request to amend their petition provided that the Court resets the government's deadline for filing a dispositive motion, takes no position on petitioner's request to proceed pseudonymously, and opposes any request by petitioners for this Court to establish procedures governing this case at this juncture.

Respectfully submitted,

DANIEL TENNY

*/s/ Sean R. Janda*
SEAN R. JANDA
BRIAN J. SPRINGER
(202) 514-3388
  Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
APRIL 2026                Washington, D.C. 20530

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1644 words. This response also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

/s/ *Sean R. Janda*
Sean R. Janda